Good morning. My name is Tanya Rose. I represent Appellant David Fabbrini in this matter. This is a, I'm going to try to talk quickly and succinctly so I save a bit for rebuttal. You're going to try to talk what? Pardon? Couldn't understand you after I'm going to try to talk. Oh, quickly and succinctly so that I can save time for rebuttal should such be necessary. Then it would be at a higher volume. Or I can just lean a little forward. Is that better? Is that better? We'll try. Bring it a little closer to you. Oh, I get it, like this. Anyway, this is a, as you probably know, this is a civil rights retaliation case, and it shows up. What was the, that's really far from obvious from the previous one. There's no mention of retaliation for what? I mean, it's sort of mentioned briefly, but all the emphasis is on the malicious prosecution elements and very little from why they would be after this guy. Uh-huh. Well, as is alleged, as is alleged in the complaint, there is a lot of information, a lot of allegations about the history of the, of his issues that he had with certain people on city council. He was an outspoken critic of many of their issues, the reason of many of the things that happened in the city over the course of time. Do you agree that the ultimate questions here turn on State, California State malicious prosecution law? That is what the Federal case law says as to what the standard is. Well, it's what it said, but then, you know, there are these, there was a Supreme Court case a couple of years ago called Hartman v. Moore, which seems to possibly which was a retaliation malicious prosecution case, and it doesn't seem to be looking at State law. It comes to the same conclusion that you need probable cause. Yes. Well, that raises a couple of issues, but I want to the answer is that there is the issue of malicious prosecution arising in a civil case on a 1983 basis is, it seems unprecedented, as the Respondents pointed out in their brief. There was a recent case whose name now escapes me with an African name for the, for the first time in a long time, and it was a case that was held under, you know, there's the existence of a 1983 malicious prosecution case is a valid one. So it seems to be. Do you understand the facts, the malicious prosecution was for filing a declaratory relief action as to whether a bond was required? I beg your pardon. Is, is, what's it, is, are you saying what was, let me briefly explain the facts, which are actually set forth in the complaint. And just very quickly, the reason you said that it just seems like this is all hinging on this weird or this very limited issue of whether there was probable cause, it's true, because a malicious prosecution analysis requires that before any issues of malice or the reason it all happened comes before the Court, one has to show probable cause. But, but, but probable cause in this context essentially is sort of a Rule 11 standard. Which is to say, what do you mean? More than probable cause. Well, I, I, but. If we're looking at California malicious prosecution, well, that seems to be the case. Civil malicious prosecution. Whether any reasonable attorney would have believed that there was a, that there was a claim. That, that's what the standard is repeated again and again. And it seems to me, and there were, the original complaint that was filed by the city underneath alleged claims for fraud, decrel, and. But those counts were dropped when they're not. They were after my client's attorney below filed a demur. And that's one of the issues that, that I do want to get to here. So, but, so. And what was left was the declaratory relief as to whether he should file a bond. Yeah, the declaratory relief action. What, what was before the Court below, I guess, was a question of whether, you know, my client was required to be forced to sign, to collateralize the small amount of money that was left to be collateralized. And. That's, that's a malicious prosecution. I just wanted to get it clear. Yeah. That's what's, that was what was left on this, the, the, this whole sort of case hinges on, at least in the courts, the district court's analysis, that issue. The, the district court's order granting summary judgment was, was, it consisted in one sentence. And the Court said that the summary judgment was appropriate on the declaratory relief action because the defendant, the appellant, admitted that he did not fully collateralize the loan in violation of the terms of the loan. That was the entire order. Why isn't that a satisfactory entire order? A couple of, in, in my opinion, I respectfully disagree with the district court's order for, for two reasons. Number one, it was a, it was a misstatement of fact. And number two, it fails to take into account the well-established analysis of whether one can properly have a claim for declaratory relief, which requires a showing of justice. But let's step back. The actual standard under California law, assuming that's what we're applying, I mean, assuming that, that this whole doctrine applies to civil actions, then assuming that we're applying the California law of malicious prosecution for civil actions, the standard is not what you stated, stated before. It is whether any reasonable attorney would agree that the action is totally and completely without merit. That's, that is correct. So it's not a reasonable attorney, it's any reasonable attorney. And it's, and it's not whether it was viable, but whether it was totally and completely without merit. So the question is, how does this cause of action, underlying cause of action, aside from the question of what was dropped or wasn't dropped, meet that? Sure. How does it, how is it totally and completely without merit? Number one. Such that any reasonable attorney would think that. Sure. Number one, there wasn't a contracted issue, which 1060 requires, or some, or an issue in relation to property, as that statute has been defined. There was no 1060 issue that was appropriately before the subject of a declaratory relief action. There was no what issue? I'm sorry, I didn't hear you. So 1060, the declaratory relief statute in California requires that the issue being the underlying issue, there's a dispute, a justiciable dispute about a contract. The only, there was no contract here before the parties that was at dispute. But that goes to the, is it, was it not reasonable for the city, the city's attorney to, to think that this could be described as a contract, the city council had, had stipulated with respect to the, the amount of collateral? Was that not a, not a plausible ground for proceeding? Well, he, it wasn't, the cause of action for contract wasn't, breach of contract was never alleged. So that suggests that he, that he didn't believe that there was a contract claim. So, right. So that comes up. That, that to me seems an issue. And I. Well, the fact that your client didn't think there was a contract doesn't go to the question of whether the initiation by the municipality of a, of a declaratory proceeding wasn't in good faith. Oh, I'm sorry. I think maybe, maybe I wasn't clear. The city attorney never alleged a claim for breach of contract in his, in the initial action that he filed. One would assume if he felt there were a contracted issue, he would have so alleged. That is what I meant to say. So it was he who didn't believe or alleged. So your claim is that you can't have a declaratory action, a judgment action unless you have a contract? Contract or the matter is in relation to property. And this matter was not in relation to property? Well, it was in relationship to its, I mean, it depends on how abstractly one wants to conclude it. The, the, I, the, it was in relationship to signing collateral or not. But the, but, go ahead. What about, I think I'm going to talk about the slap suit at all. Say it again. The slap suit issue. I'd like to talk about that. But I want to, I'd like to finish this, this issue with regard to the declaratory relief. So even if you assume for purposes of, of argument that there was a declaratory relief claim, at least that there was a, any reasonable attorney could have believed one could allege that, there, there was still no justiciable, justiciable action, and that is defined by whether the matter was ripe and whether there was imminent hardship. But this is getting into the minutia of legal doctrine in a way that can't possibly lead somebody to think there was malicious prosecution. I, I mean, if, because it would be extremely destructive of a legal system, would it not, if every time somebody ran afoul of one of these doctrines, they're going to get sued for malicious prosecution in a, in a civil action? But that's the whole, I mean, that's the way that malicious prosecution claims are analyzed. Yes, but they're analyzed at, at a level of extreme deference to the attorney's judgment. Well, whether or not that's true, I mean, if the position that you're taking is that you're unconvinced that any reasonable attorney could, that a reasonable attorney could have thought there was a declaratory relief claim here, I, I'm going to continue to try to argue that I believe there, that no reasonable attorney could have thought that. What I am very bothered by is the notion that a city can claim that it's subject to a, that it can bring a slap motion, because a city doesn't have any First Amendment rights. So I don't understand why the city is, is, is claiming that it has a slap motion. That bothers me. Well, the slap motion underneath below was, was alleged as to the defamation claim that named, in which an individual was named. Okay. That was the, that was what the slap motion was about. I am not challenging the fact that the defamation claim was slapped. I'm challenging the fact that the city was named. The city brought a slap motion. It, it seems to me that my, my understanding of the, the, what I recall of the research was that the city had a right to bring a claim against, could slap an individual on it for a, when it's alleged against an individual. But I will defer to you if you believe. I guess an individual, what's alleged against an individual? The defamation claim was alleged. It was not alleged against the city of Dunsmond? No. I see. Yes. So with respect to the declaratory relief claim, I know it's, it's frustrating for me when I understand the history of this case involves a tremendous amount of animus demonstrated by the city council to my client. There's a long history, the facts are alleged in the complaint, and that I'm before this Court arguing the niceties of a declaratory relief action. But that is the only way in which, that's how I have been herded and corralled into being, into having the matter before this Court. So I believe the action was not judiciable. It wasn't ripe. There was no sort of, there may have been a dispute between the parties, but there wasn't an underlying basis to bring the claim, number one. Number two, there's not a matter for moving to dismiss before the State court. You're not asking us to determine whether it was justiciable, whether, or any of those issues, or are you? This is a 1980, I brought this as a 1983 malicious prosecution action. It's very much related to a, it's a First Amendment retaliation claim. Sotomayor. Pardon? I said Sherlyn. Yes. And there are a history of other retaliatory actions in the past. It was brought as a malicious prosecution claim because if just brought as a loss, if it just was alleged that a loss that were brought in retaliation, it would be much easier, it would be easy for the appellants, the Respondents, to say that they felt they had a right to bring a lawsuit, which I don't believe is the standard for which they need to defend it or that I need to prove it. So do you, let me say, just take one minute about attorney's fees, what's your position on attorney's fees? Okay. There's one other piece I would like to argue before I get to the attorney fees. The attorney fees, or I'll come back to my other issue, but with regard to the When lawyers, when judges ask questions, it's because it's what they think is important. Fair enough. And it's usually a good idea to answer the question. Fair enough. The attorney fee issue, I believe that the trial court erred in that it did not consider it, as I made the argument below, it didn't consider the overall relief obtained by the prevailing party, which was in this case the city, in relation to the success achieved. The Hensley standard, as we all know, or one of the issues with Hensley, was if the one is still entitled to attorney fees, even if he, he or she lost part of the matter for which they're entitled to attorney fees. In this case, I believe that the defamation claim by the party's own admission was only a small part of the attorney fees that were generated. And yet the trial court, without much analysis, just said, okay, they're inextricably intertwined. I'm going to grant you the almost the entire amount of attorney fees. To me, the law requires that those are, that the issue, that the court had an obligation to weigh out what the success, the success of the party was in light of the whole matter, irrespective of whether they were inextricably intertwined. And I would ask this Court to at least, to reverse and order the amount of attorney fees, if any, for the amount only that went to the defamation claim, or to remand it to the trial court to undertake the proper analysis. As the defamation claim and the malicious prosecution issues were essentially identical with respect to their factual basis, were they not? With respect to the factual basis, no, there was a bit of a difference in them. But the, with respect to the factual basis, yes, they're the same. This, this all, there's one primary right here. But the issue, the, the legal research, at least according to the billing records, was what took the Respondent such a long time to analyze with regard to the, to the malicious prosecution piece. So the law that they had to research was very different. You say a long time. How long? Well, they're, they're, they're, they spent 180 hours on the motion. At least, they're seeking billing for 180 hours. Yes. And the, the fee award is only for the slap? No, the fee award is for both. For both. Well, maybe I misunderstand what you're saying. Yes, the fee award went to this, was for the slap suit for defamation, correct. Am I making sense? In other words, yes. They brought, they brought a motion to, a 12b-6 motion and a slap suit conjoined, and I prevailed on the 12b-6, at least with regard to the malicious prosecution. But the defamation claim was filing the lawsuit, right? In other words, the claim defamation was in the lawsuit. It wasn't about something else. That's correct. So it, it, it still had basically to do with the underlying validity of the lawsuit. I mean, it went to the same claims. It had to do with, yes, that's correct. One of the facts had to do with, with what one of the city council people said that the people. So the separable piece would be anything that had to do with the definition of malicious prosecution. That's my argument, and that the Court did not engage in the analysis. That's correct. May I be heard for a couple more minutes about the trial court's decision to drop the fraud claim on, on the 12b-6? Well, one minute. You're way over, you know, approaching W time. You have one minute. Oh, okay. On the 12b-6 motion, the Court dropped in a footnote that the claim for, for fraud was no longer, could no longer be part of appellant's argument that there was a malicious prosecution claim because the claim for fraud was dropped by city's council below after his appellant's counsel brought a demur. In my opinion, this is abuse of the Court's discretion or, depending on the standards, the abuse of discretion, or as a, on a de novo review, the fact that the fraud claim was dropped after demur does not go to, that is not how one defines whether there's malicious prosecution. The Crowley v. Cattleman case, 1994 California Supreme Court case, clearly states there has to be probable cause for each and every cause of action at the time it was filed. That was never demonstrated. That, the Court never gave anyone a chance to make that demonstration. So. What would you say the authority for that was? Crowley v. Cattleman cited in the brief. So that even if this Court thinks that it was possible that there was a valid declaratory relief claim, there was still a fraud claim that I believe that the district court erred in removing from the case at the 12 v. 6 stage. So I'm going to step away now. Thank you. Good morning, Your Honors. Excuse me. Initial J. Scott Smith, and I'm here appearing on behalf of the defendants in this matter. Just to get ourselves going a bit, first of all, I want to make clear that there's a basic underlying concern here, and that is what has, what was a relevant and relatively simple State law dispute, has now been morphed into a Federal litigation that has drugged through the district court, now we're here at the Ninth Circuit, over what is one, I think, an indisputably reasonable dispute among the parties below at the State court that the City eventually tried to resolve by simply saying, you know what, this thing is costing us way too much money in comparison to what it's worth, let's just dismiss it and let's go our own way, and yet here we are, we find ourselves before you months and years later. The counsel, and I'm going to address a few things that counsel made during her oral argument, and of course would invite questions from the Court as I go. Counsel made the first comment that there was no contract that was the subject of the underlying declaratory relief action. I, of course, would take issue with that. If we look at the excerpts of record, we see that there was a loan application for roughly $100,000. That loan was to be paid in two disbursements. There was a City counsel resolution that placed an express condition on that loan, and unless that it be collateralized fully, actually collateralized to 110 percent, and what's counsel's meaning to what happened is that because it was paid in two installments, a promissory note which incorporated the conditions that the City counsel had placed was signed as to the first $62,000. But when the second check was issued, no additional promissory note and thus no security was required to be signed. May I just ask you a couple of questions? The defamation claim, is it correct that that was limited to defamation in the City's declaratory action suit, or is it defamation by individuals aside from the suit? It's my understanding, and I'm going to – I have to beg a little bit of ignorance because this was not an issue that was briefed, and frankly, that portion of the record dealing with the dismissal of defamation claim wasn't fully put forth in either party's excerpts of record because it wasn't something that was raised on appeal. All right. But the defamation claim as pleaded, because I just looked at it, was actually about some news releases. It wasn't really about us. Right. But it was a news release related – my understanding is it's a news release that was related to the pending litigation under California law. The civil – California has a Civil Code section 47 which extends a, for lack of a better phrase, a judicial privilege or a privilege, a litigant's privilege that has been extended to publicity statements about pending litigation. That is – and that was applied, and also under California – the California case law, which effectively states any time the section 47 privilege applies, there's – it's almost an a fortiori result that an anti-SLAPP motion would be an appropriate way to resolve that, and thus that gets us to attorneys' lease. But what I was bothered by was whether the City would have a SLAPP motion, but actually it was not brought by the City. That – that was a motion that would have been brought on behalf of the individual. But there is case law even within the circuit that municipalities do have First Amendment rights of speech and detention. Well, but they don't. I mean, that doesn't make any sense to me at all. It doesn't. It doesn't really say that. In the Nora Pennington context, there's a statement that says that municipalities can have a Nora Pennington defense, but I didn't see anything that says that municipalities flat out have First Amendment rights. Well, and then again, I'm of course relying on the case law that arises in the Nora Pennington context that gives me this. Right, which is not directly about the First Amendment. It's about an interpretation of statutes to incorporate the First Amendment. Yes, I would agree with that. Now, the defamation suit was dismissed as a result of the SLAPP motion. That's correct. And that you're entitled to attorneys' lease. Under California law, the prevailing part. The rest of the action was to the malicious prosecution. Yes. And were you awarded attorney's fees for that also? No. Okay. So on the attorney's fees, the question that I have at least is, there was a fair amount in the billing, I gather, that was integrally related? Sure. Okay. Why should that be attributed to the SLAPP motion rather than to the malicious prosecution motion? Because, first of all, since where the attorney's fees issue arises under California law, I'm looking at California case law, although California case law, frankly, adopts the same standards that are applicable in Section 1988 fee motions. But there is a well-recognized body of case law that states that where you have to perform the same task that is inextricably intertwined with issues for which fees are awardable and issues for which they are not, that the district court has the discretion to award those fees which are sufficiently intertwined that the district court can effectively state you would have incurred those fees because of the anti-SLAPP motion, even though the same arguments, the same work goes to issues for which fees are not recoverable. So what we're reviewing here, then, is did the district judge abuse his discretion in making that determination in this case? The record, there was more than sufficient evidence within the record for the district judge to adequately review the billing statements and make a determination whether there was a sufficient intertwining. And, in fact, I mean, if you look at the record there, in the excerpt of the record, there's a declaration of the trial counsel. She went through and separated out for the court those fee entries which were. This is not a civil rights action. It's not a civil rights action. That's correct. But, well, overall, I suppose it isn't. The whole case arises under 88. Well, this is a civil rights action. Right. But the anti-SLAPP statute, which is when we're talking about fees, what California case law does is that they adopt the same discretionary standards for determining the amount, the Lodestar calculation method, that are applicable in Section 1988 cases. The one big difference, though, between the civil rights fees jurisprudence and the anti-SLAPP jurisprudence is we don't have the Christenberg standard in anti-SLAPP motions. So we don't. If it is a strict winning party purveyor, it gets their fees. And then we go. What was the amount of the fees ultimately awarded? It was $20,500. The initial request was for close to $20,000. It was almost $27,000. So the trial, the district judge, in reviewing the fee entries, went through it and made the determination that roughly $6,500 worth of fee entries were not sufficiently intertwined based upon its review. And is it clear under California law, can you cite me a case, that a SLAPP motion can lie against a government official acting in their official capacity? I don't have the case law in front of me, but I'd be certainly happy. Because, again, this is not an issue that was raised on appeal, so it's not an issue that was briefed. And I'll be honest. But if the Court would indulge me, I can certainly submit a short letter brief. Well, if we want to, we'll let you know. Okay. If we need it, we'll let you know. Okay. Thank you. Mr. Smith. It's just troublesome to me. Mr. Smith, Ms. Rosen, arguing that dropped claims for fraud and others can be a – can be an appropriate ground for demonstrating the elements of malice in a situation like this, and I asked her what the authority for that was, and she referred to the Crowley case. And I wonder what your view of that is. Is not – is there not some substance in Ms. Rosen's argument relying on Crowley? Okay. I'm first going to address the question – your question in terms of the State law with regard to malicious prosecution. And I have a follow-up as to why I'm not – I believe that that isn't itself necessarily controlling an 83 action. Crowley was a case in which you had a will contest that alleged six different bases of a will to challenge the will. That case went to trial on all six bases. The will contest was rejected. In the malicious prosecution lawsuit, the now plaintiff said – essentially admitted, well, they may have had a reasonable basis to allege one of those six. And in each one of those six, what's important, too, is that they involved factually distinct claims. One of the challenges in the Crowley will contest was that the – was that the deceased person never signed the will. There was no will. Another one was there was no testimony of intent. Another one went to capacity to sign the will. Each one of these required significant independent discovery from each other. Each one of those went all the way to trial. And so when there was a resolution on the merits as to each one of those, that was sufficient to satisfy the California standard for malicious prosecution actions that there was a resolution on the merits. There's another California case called Jenkins, which is cited in the briefs, which is what the district court relied upon. The Jenkins case was one more akin to here, where you had a voluntary dismissal early in the litigation. And what Jenkins states is, under those circumstances, we're not – as a matter of California law, that is not a favorable termination of those claims on the merit because we want to encourage – I mean, going to the truth or falsity of the parties to, as the litigation goes, to research, look at it again, and dismiss claims as they go. And in fact, there is an offhand sentence in the Crowley opinion – I don't have the point cited in front of me, but we did point cite it in the brief – that even doesn't come out and say it, but it suggests that one of the things counsel can do is, as you go along, continue to research and investigate claims and drop them as you go. Well, does it matter whether there was litigation regarding the claim before it's dropped? In other words, if there's money expended and time expended to demonstrate the frivolousness of the claim and then you drop the claim, does that make a difference? You know, I don't – and under California law – And also, was there here? What happened here? What happened here is there was an initial pleading – and our record is really quite limited in this regard. And here's a place where if plaintiff wanted to survive summary judgment on this issue, they needed to come up with a lot more than is in the record. What we have is just the docket sheet from the trial court. We don't know if there was any exchanges of meet-and-confer letters, those sorts of things going into it. There was – the initial filing of the – Mr. Fabbrini in the State court action was a demur. Before the demur – before an opposition was filed, before the demur could be heard, an amend – first amended complaint was filed which dropped the allegations that she would now – or that plaintiff would now like to make part of this overall malicious prosecution lawsuit. My follow-up position on that, though, is since this is a Federal constitutional claim, whether or not – whether or not California would necessarily recognize a malicious prosecution circumstance isn't – doesn't answer the question. Here, there has to be some violation of a Federal right. And the mere – if you might say, the mere pleading, initial pleading, especially on claims that are dropped, simply does not meet the standards necessary, I believe, to come to a Federal court to adjudicate the important – you know, as the Supreme Court likes to, you know, keep telling us, this is a Constitution we are interpreting that deals with the, you know, broad problems of limits on the governed or the governors over the governed. Whether – whether or not there was, you know, how much – how much thought went into over – perhaps over pleading a lawsuit that was cured almost immediately isn't really – civil lawsuit for damages isn't one of those concerns. I am now 4 minutes and 10 seconds over. If counsel – if the Court has any additional questions for me, I would be happy to answer them. Otherwise, I will submit. Thank you, counsel. Thank you. We'll give you one minute for rebuttal. I just – a couple of things I want to say quickly. I disagree with the Respondent's counsel's analysis of distinguishing Crowley. There is a bright line in Crowley. There has to be probable cause before, at the outset of a lawsuit. Whether the extent of damages is not relevant. The question is whether there was a reason to bring the lawsuit and to bring a claim in the first place. Crowley is clear about this. With regard to – But was he expended on the fraud claim? Yes. Which was? Pardon? Which was what? I don't know. It was there – there was a – he had counsel underneath who expended money. I mean, he paid his lawyer. With regard to the fraud claim before the fraud claim was dropped? Correct. Is that on our record now? No. It's not, but I'm not – with all due respect, I'm not exactly sure how that comes into play when the analysis is whether there was a sufficient basis for bringing the claim in the first place. I'm more than happy to augment the record to show that. Well, I think it has to do with whether there's a – whether there's a malicious prosecution cause of action, because there has to be an injury. Yes. But the injury can be demonstrated in the fact that there were press releases about the fact that a fraud claim was alleged, which is in the – which is in the I see. So your contention is that the injury was in the defamation claim. This place is not San Francisco. It's a 2,000-person little town. Everybody knows everybody's business. My client was utterly devastated by this fraud claim. So there are damages that arise irrespective of whether he spent money, which, in fact, he did, on getting rid of the fraud claim. The final thing I do want to say is with respect to the issue of Federal rights, this is a First Amendment issue. It says so in the complaint. There's a – this whole issue surrounds my client's First Amendment rights to speak out on matters of public concern that he had in the past. This action of filing a lawsuit was in retaliation, he alleges, for the history of their – of his having spoken out against them and their animus towards him. So this is very much a civil rights case. I know it's poindextery and boring to be arguing the minutiae of a malicious prosecution claims, but that is how this is presented from the summary judgment that was brought by the Respondents. That's how I had to respond to it. And, indeed, their malicious – 1983 malicious prosecution claims are valid and viable, and there's case law about them. Thank you very much. Thank you, counsel. Thank you both. The case is, I argue, will be submitted.
judges: Pollak, Reinhardt, Berzon